FILED
2022 Jul-21  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JAMES BELL,                     )
                                )
        Plaintiff,              )
                                )
v.                              )        Case No. 4:21-cv-00181-LSC
                                )
KILOLO KIJAKAZI,                )
Acting Commissioner of          )
Social Security Administration, )
                                )
        Defendant.              )

**MEMORANDUM OF OPINION**

## I.     Introduction

The plaintiff, James Bell ("Bell"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Bell timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Bell was 39 years old at the time of the Administrative Law Judge's ("ALJ") decision and completed school through the ninth grade. (*See* Tr. 33, 167, 201.) He has past relevant work as a construction worker and a breakfast cook. (Tr. at 68, 209.)

Plaintiff alleged he has been disabled since December 1, 2013, due to pain, high blood pressure, depression, bipolar disorder, kidney issues, and a gunshot injury to his right hand. (Tr. at 77, 200.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). (*Id.*) §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. (*Id.*) §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. (*Id.*) The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. (*Id.*)

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. (*Id.*) §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If

the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that the plaintiff had engaged in two separate jobs since May 3, 2019, the date he filed his application, but they did not meet the standards of substantial gainful activity. (Tr. at 22, 186). According to the ALJ, the plaintiff's "post-traumatic stress disorder (PTSD), major depressive disorder, status post gunshot wound to right hand with fracture and deformity, and abdominal hernia" are "severe impairments." (Tr. 22) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.) The ALJ determined that the plaintiff has the following RFC:

> [T]o occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, sit six of eight hours, and stand and/or walk six of eight hours. He can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; never work with dangerous moving machinery or at unprotected heights; never finger with the right upper extremity but can occasionally handle with the right upper extremity; avoid concentrated exposure to temperature extremes and vibration; can understand, remember, and carry out simple instructions; can maintain attention and concentration for two-hour periods at a time; can have occasional contact with the general public; can perform jobs that do not require working in tandem with coworkers; can make simple work related decisions; can adapt to

routine and infrequent workplace changes; can perform jobs that do not
have a fast-paced production requirement; and can tolerate ordinary
work pressure.

(Tr. at 25)

The ALJ found that Plaintiff could not perform any past relevant work. (Tr.
at 31).  The ALJ also determined that Plaintiff is a "younger individual age 18-49" at
38 years old at the time of his application, has limited education, and is able to speak
English, as those terms are defined by the regulations. (*Id*.) The ALJ determined that
the "[t]ransferability of job skills is not material to the determination of disability
because using the Medical-Vocational Rules as a framework supports a finding that
the claimant is 'not disabled,' whether or not the claimant has transferable job
skills." (*Id*.) After considering Plaintiff's age, education, work experience, and RFC,
in addition to the Medical-Vocational guidelines and the testimony of a vocational
expert ("VE"), the ALJ determined that Plaintiff can perform some forms of light
and sedentary work that exist in significant numbers in the national economy. (Tr. at
31-32.). The ALJ specifically said that Plaintiff could perform jobs such as fruit
distributor and surveillance system monitor. *(Id.)* The ALJ concluded her findings
by stating that Plaintiff "has not been under a disability, as defined in the Social
Security Act, since May 3, 2019." (Tr. at 32).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ failed to accord proper weight to the opinions of Dr. Pascual Herrera, Dr. David Wilson, Dr. June Nichols, and Dr. Jarrod Warren and did not state sufficient reasons for doing so, and (2) there is not substantial evidence to support the ALJ's decision because the testimony by the VE was not based on a full or correct statement of Plaintiff's limitations and impairments. (Doc. 10 at 57-74.)

**A. Weight Given by the ALJ to the Opinions of Dr. Herrera, Dr. Wilson, Dr. Nichols, and Dr. Warren**

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Bell, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving he had a severe impairment, he thus had

the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "post-traumatic stress disorder (PTSD), major depressive disorder, status post gunshot wound to right hand with fracture and deformity, and abdominal hernia." (Tr. 22.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.) Based on the determinations that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national

economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since his application date of May 3, 2019. (Tr. 23-32.)

Plaintiff argues that the ALJ failed to accord proper weight to his primary care physician, Dr. Pascual Herrera, along with Dr. David Wilson, the consulting psychologist for the commissioner, Dr. June Nichols, the examining psychologist, and Dr. Jarrod Warren, the examining physician. (*Id.*) The ALJ found the opinions of Drs. Herrera and Warren partially persuasive and the opinions of Drs. Wilson and Nichols not persuasive. (Tr. at 29-30.) Plaintiff argues that the ALJ failed to properly accord these doctors' reports and did not provide adequate cause for rejecting their opinions. (Doc. 10 at 57-70.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical

opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927.

Plaintiff does not argue that the ALJ failed to follow the 2017 regulations, but he relies on Eleventh Circuit case law that gives deference to treating physician opinions that preceded the new regulations. (Doc. 10 at 57-70.) The Plaintiff applied for SSI on May 3, 2019, over two years after March 27, 2017, so the ALJ properly applied the new regulations. (Tr. 22, 165.) The Court will now examine the weight given by the ALJ to each of these opinions in turn.

### 1.  Weight Given to the Opinion of Dr. Pascual Herrera

Dr. Pascual Herrera completed a mental health source statement on February 12, 2014, and a physical capacities form on April 16, 2015. (Tr. 719-720.) Dr. Herrera offered his opinions by circling yes or no response on the mental health source statement, indicating that Plaintiff could understand, remember, or carry out very short and simple instructions; could not maintain attention concentration and/or pace for periods of at least two hours; could not sustain an ordinary routine without special supervision; could not accept instructions and respond appropriately to criticism; could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and would miss 10 days of work in a 30 day period due to his psychological symptoms. (Tr. 719.) Dr. Herrera also indicated that these limitations existed back to June 1, 2012, and listed narcosis as the main side effect of Plaintiff's medications. (*Id.*) The ALJ properly considered the supportability and

consistency factors in determining the weight she gave to Dr. Herrera's opinions. (Tr. 30.) On the physical capacities form, Dr. Herrera indicated by check marks that Plaintiff can frequently lift up to five pounds, occasionally lift between six and twenty-five pounds, and never lift twenty-six pounds or more; can occasionally reach with his left hand but never handle, finger, or feel with that hand; and can frequently reach, handle, finger, and feel with his right hand. (Tr. 720.) In response to the question of whether Plaintiff could push or pull with his hands well enough to operate controls, Dr. Herrera circled no. (*Id.*) He listed "Paralysis/Neuropathy" in the left hand, along with "Anxiety/Depression" and "Psychosis" as the conditions causing Plaintiff's limitations. (*Id.*) Finally, Dr. Herrera listed nausea, vertigo, and narcosis as side effects of Plaintiff's medications. (*Id.*)

The ALJ properly considered the supportability and consistency factors when evaluating the opinions expressed by Dr. Herrera on these forms. (Tr. 30.) The ALJ concluded that "Dr. Herrera's opinions that the claimant can maintain socially appropriate behavior, adhere to basic hygiene standards, and occasionally lift up to 20 pounds appear to be fairly well supported by his concurrent treatment records." (*Id.*) The ALJ also found "[t]hose opinions [to be] consistent with the objective findings from other medical sources." (*Id.*) Accordingly, the ALJ accounted for

these limitations in the RFC by including a restriction of lifting 20 pounds only occasionally. (Tr. 25.)

The ALJ concluded that aside from those opinions, "Dr. Herrera's opinions are not persuasive" based on that fact that he "offered no explanations in support of his responses … and the overall evidence of record shows no objective indication of an inability to perform the mental job tasks he indicated or that the claimant would miss ten days of work per month." (Tr. 30.) The ALJ noted that Dr. Herrera listed narcosis as a side effect of Plaintiff's medication, and while treatment records show complaints of fatigue, the ALJ found no objective indication of this in the record. (*Id.*) Finally, the ALJ highlighted that Dr. Herrera confused Plaintiff's right and left hands when describing the limitations of each because the gunshot wound and resulting limitations occurred in Plaintiff's right hand, but Dr. Herrera indicated more severe limitations in Plaintiff's left hand. (Tr. 30, 200, 720.) The ALJ felt that this error by Dr. Herrera "sharply undermin[ed] the persuasiveness of those opinions." (Tr. 30.)

Substantial evidence supports the ALJ's assessment of Dr. Herrera's opinions. The ALJ took note of the records showing that Plaintiff consistently had a normal mood and affect with normal behavior and thought content, and notes show his demeanor as being "cooperative and respectful." (Tr. 24, 425, 428, 432, 436,

448, 454, 562, 568, 691, 699, 706, 756, 767, 770, 778, 807-08, 810.) Except for one instance prior to the application date when he looked disheveled, Plaintiff presented for his appointments with an appropriate appearance. (Tr. 24, 511, 517, 524, 530, 561, 568, 635-36, 639, 807, 810.) Dr. Herrera's own treatment notes show that Plaintiff's exams were within normal limits, though they do indicate some general fatigue, occasional reflux symptoms, pain and limits in the range of motion in his right wrist and hand, and anxiety and depression. (Tr. 582-97, 728-38, 740, 742.) During a visit on January 30, 2015, treatment notes state, "This patient is doing much better physically and psychosocially with this current treatment regimen reviewed today." (Tr. 584.) At other times, notes from medical exams indicate no reports of psychological issues. (Tr. 428, 689, 704, 754, 760, 767, 769, 776.) While Plaintiff frequently complained of fatigue to Dr. Herrera, treatment notes regularly indicate that he was alert during his exams. (Tr. 423, 425, 428, 432, 436, 439, 442, 448, 451, 454, 478, 699, 702, 705-06, 711, 755, 758, 761, 767, 770, 777.) On several other occasions, Plaintiff denied experiencing fatigue. (Tr. 427, 431, 434-35, 447-48, 616, 620, 794.)

Finally, the ALJ found that Dr. Herrera's confusion over the limitations in Plaintiff's left and right hands seriously undermined his opinion on those issues. (Tr. 30.) Dr. Herrera indicated that Plaintiff had greater limitations on manipulation of

his left hand than his right, even though the record shows that Plaintiff's right hand suffered lingering effects from a gunshot wound to his right hand. (Tr. 45, 582, 585, 720.) Plaintiff denied experiencing any issues with his left hand, and Doctor Jarrod Warren observed full grip strength in Plaintiff's left hand. (Tr. 47, 790.)  Plaintiff also testified that he was able to hold a hairbrush and turn a doorknob with his right hand. (Tr. 48-49.)

Furthermore, Plaintiff maintained a job at Waffle House from November 2018 to January 2019 working the grill. (Tr. 57.) At that time, he was able to handle the utensils to prepare all the dishes. (Tr. 57-58.) Because the VE classified this job as breakfast cook, with the corresponding requirements of medium exertion and the ability to occasionally lift 20 to 50 pounds and frequently lift 10 to 25 pounds. (Tr. 68.) U.S. Dept. of Labor, Dictionary of Occupational Titles §313.361-018, 1991 WL 67271 (4th ed. 1991). Accordingly, the ALJ could reasonably find that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds when determining his RFC.

Substantial evidence in the record supports the ALJ's conclusions about the weight to give Dr. Herrera's testimony. Therefore, the ALJ did not err in finding Dr. Herrera's opinion only partially persuasive.

## 2.  Weight Given to the Opinion of Dr. David Wilson

Plaintiff next argues that the ALJ failed to properly weigh the opinion of Dr. David Wilson, the consulting psychologist, because the ALJ failed to state with at least "some measure of clarity" her grounds for discounting his opinion. (Doc. 10 at 61-67.) The ALJ found the opinions of Dr. Wilson not persuasive. (Tr. at 29-30.) On April 7, 2015, Dr. Wilson, like Dr. Herrera, completed a mental health source statement that mostly required circling "yes" or "no" in response to questions. (Tr. 565.) Through that format, Dr. Wilson indicated that Plaintiff could understand, remember, or carry out very short and simple instructions, but he could not maintain attention, concentration and/or pace for periods of at least two hours; could not perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; could not sustain an ordinary routine without special supervision; could not accept instructions and respond appropriately to criticism; and could not maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*) When asked how many days he would expect Plaintiff to miss in a 30-day period due to his psychological symptoms, Dr. Wilson opined that Plaintiff would miss 25 days of work. (*Id.*) Dr. Wilson responded by circling "yes" when asked whether the limitations he indicated existed back to May

21, 2013. (*Id.*) The only side effect that Dr. Wilson listed for Plaintiff's medications was sedation. (*Id.*)

The ALJ determined that these opinions offered by Dr. Wilson were "not persuasive" because they were "not consistent with his own objective findings, as the only abnormalities he observed were mild problems with working memory, difficulty performing more than one calculation of serial sevens, and an intense affect." (Tr. 29, 563, 569.) The ALJ also found Dr. Wilson's opinions unpersuasive because he "failed to offer any explanations in support of his opinions, which is particularly noteworthy given his opinion that the claimant would miss 25 of 30 workdays per month." (Tr. 29.) Dr. Wilson stated that while Plaintiff struggled with depression, "he does not have severe cognitive deficits." (Tr. 570.) On April 7, 2015, Dr. Wilson opined that Plaintiff's condition had worsened since he last saw him on May 17, 2012. (Tr. 577.) He cited increased depression, frequent panic attacks, anxiety, hypervigilance, and symptoms of PTSD. (*Id.*) However, Dr. Wilson noted that Plaintiff "arrived on time," "presented with neat hygiene and appearance," exhibited thought processes that were "grossly intact" and speech that was "clear and normal in rate," and was "cooperative and respectful throughout" the visit. (Tr. 561-62.) Furthermore, Dr. Wilson's opinions are inconsistent with other evidence in the record where other providers noted normal mental status exams and behavior.

(Tr. 425, 428, 432, 436, 442, 448, 454, 479, 562, 582-97, 691, 699, 706, 756, 758, 761, 767, 770, 778, 795, 807-08, 810.)

Dr. Wilson also offered the opinion that Plaintiff's mental health issues "would make it very difficult for him to work in any setting" and that "[h]is ability to withstand the pressures of day to day occupational functioning is highly impaired." (Tr. 564.) The ALJ rejected this conclusion as "inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c)." (Tr. 30.) The ALJ correctly disregarded Dr. Wilson's conclusion as to Plaintiff's disability. As the ALJ noted, 20 CFR 416.920b(c)(3) explains that "[s]tatements on issues reserved to the Commissioner," which "would direct our determination or decision that [the plaintiff is] or [is] not disabled," are "inherently neither valuable nor persuasive."

Plaintiff argues that the ALJ improperly substituted her opinion for that of Dr. Wilson and asserts that the ALJ failed to state with "some measure of clarity" the grounds upon which she rejected Dr. Wilson's opinion. (Doc. 10 at 62.) *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)). Plaintiff also notes that Dr. Wilson was the consulting psychologist for the Commissioner and endorses the Seventh Circuit's adoption of a "degree of suspicion" standard set forth in *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). As applied in *Wilder*, the

"degree of suspicion" standard proposed by Plaintiff applied in that case where the ALJ's decision went "against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointment by the [ALJ] himself to advise on [the plaintiff's] condition." *Id.* at 337. Plaintiff's argument fails for three reasons.

First, the Eleventh Circuit has had multiple occasions to consider the *Wilder* standard and has declined those opportunities to adopt it. *See Jones v. Soc. Sec. Admin., Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021); Hand v. Soc. Sec. Admin., Comm'r, 786 F. App'x 220, 226 (11th Cir. 2019) ("Binging precedent already requires ALJs to 'state with particularity the weight given to different medical opinions and the reasons therefore.") (quoting *Winschel*, 631 F.3d at 1179); *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) for the articulation of its own standard for reviewing opinions of agency-appointed consulting physicians); *Derrick v. Soc. Sec. Admin.*, Comm'r, No. 21-13388, 2022 WL 791710, at *4 (11th Cir. Mar. 16, 2022).  Secondly, the *Wilder* standard would not apply in this case, even if the Court were to adopt such a rule. As discussed in *Derrick*, *Wilder* is distinguishable because the appointed psychiatrist in that case presented the only medical evidence, but such is not the case here. *Derrick*, No. 21-13388, 2022 WL 791710, at *4. The

20

record before this Court shows examinations by multiple medical professionals, including at least one other psychologist. (*See e.g.*, Tr. 814-823.) Finally, Plaintiff presents no reasoning for his claim that the ALJ did not provide a "measure of clarity" on the reasons for which she rejected Dr. Wilson's opinion. As this Court has already discussed above, the ALJ found Dr. Wilson's conclusions to be inconsistent with his objective findings and unsupported by any explanations. (Tr. 29-30.) For these reasons, this Court finds that substantial evidence supports the ALJ's conclusion that Dr. Wilson's opinions were not persuasive.

### 3. Weight Given to the Opinion of Dr. June Nichols

Plaintiff again cites *McClurkin* in his argument that the ALJ erred by not stating with "some measure of clarity" the reasons she found the opinions of June Nichols, Psy.D., not persuasive. (Doc. 10 at 70; Tr. 30.) *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). On May 29, 2020, Dr. Nichols completed a mental health source statement similar to those of Drs. Wilson and Herrera. (Tr. 823.) She circled yes when asked if Plaintiff could understand, remember, or carry out very short and simple instructions and if Plaintiff could interact with supervisors and/or co-workers. (*Id.*) She circled no when asked if Plaintiff could maintain attention, concentration and/or pace for periods of at least two hours, could perform activities within a schedule and be punctual within

customary tolerances; could sustain an ordinary routine without special supervision; and could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Nichols also indicated that she expected Plaintiff to be off task 50% of an eight-hour workday, and she expected Plaintiff to miss 5-10 days of work in a 30-day period due to his psychological symptoms. (*Id.*) Finally, Dr. Nichols listed drowsiness as the only side effect of Plaintiff's medications. (*Id.*)

The ALJ found Dr. Nichols's opinions to be unpersuasive because her "findings do not support any of her opinions except that the claimant can interact with supervisors and coworkers." (Tr. 30.) Elaborating on this point, the ALJ mentioned that Dr. Nichols "noted no abnormalities aside from the claimant's anxious and depressed mood, difficulty calculating serial sevens or solving multiplication problems, fair immediate memory, and fair fund of information." (Tr. 30, 820.) The ALJ stated that "those abnormalities do not support [Dr. Nichols's] opinions that the claimant is largely unable to perform basic mental work tasks." (Tr. 30.) The ALJ also found Dr. Nichols's opinions to be unpersuasive because she "offered no support for her conclusion that the claimant would be off task half of the workday and would miss five to ten days of work per month." (Tr. 30.) The ALJ found those opinions unpersuasive partly because during Dr. Nichols's examination of Plaintiff, Dr. Nichols noted that his speed of mental processing was adequate and

did not make any remarks that would indicate distractibility or off-task behavior. (Tr. 30, 820.) Dr. Nichols listed Plaintiff's recent memory functions were grossly intact and his general fund of knowledge was fair. (Tr. 820.) Though Dr. Nichols described his awareness of current events as "poor" and his thinking as "abstract in nature," she said that "[h]e was able to interpret proverbs and to complete similarity items adequately." (Tr. 820.) The ALJ discredited Dr. Nichols's opinion that Plaintiff's limitations date back to December 2013 because "the claimant has worked more and earned more since 2013 than he did prior to the time he alleges he became disabled." (Tr. 30.) The ALJ also found Dr. Nichols's opinions about the functionality of Plaintiff's right hand to be unpersuasive because they were not based on Dr. Nichols's own observations and because of his ability to work at Waffle House in 2019 and to handle the utensils in that role. (Doc. 30.)

The ALJ explained with sufficient clarity the reasons for discrediting the opinions of Dr. Nichols, highlighting the lack of support she provided for her opinions and the inconsistency of her opinions with her own objective findings during her examination of Plaintiff. The Court accordingly finds that substantial evidence supports the ALJ's determination.

### 4.  Weight Given to the Opinion of Dr. Jarrod Warren

Plaintiff similarly argues that the ALJ failed to state with "some measure of clarity" her grounds for finding that Dr. Jarrod Warren's opinion was only partially persuasive. (Doc. 10 at 70; Tr. 30.) On May 17, 2020, Dr. Warren completed a physical capacities form similar to the one complete by Dr. Herrera. (Tr. 792.) Dr. Warren used check marks to indicate that Plaintiff could reach, handle, finger, and feel with his left hand constantly, but could never perform those functions with his right hand. (Tr. 792.) Dr. Warren also indicated that Plaintiff could sit upright in a chair and stand for eight hours at a time, and he expected Plaintiff to be lying down, sleeping, or sitting with his legs propped up for less than thirty minutes in an eight-hour workday. (*Id.*) Dr. Warren expected Plaintiff to be off-task 50% of an eight-hour workday but responded with "N/A" when asked how many days of work Plaintiff would miss in a 30-day period due to his physical symptoms. (*Id.*) Dr. Warren believes that Plaintiff's limitations existed back to December 1, 2013, and listed the right hand injury due to the gunshot wound and PTSD as the conditions causing the limitations he described. (*Id.*) Finally, Dr. Warren listed "[s]edation, potential suicidality, dizziness, weakness, [and] sexual dysfunction" as side effects of Plaintiff's medications. (*Id.*)

The ALJ found Dr. Warren's opinions "regarding the claimant's ability to sit, stand, use his left hand, and finger with his right hand" to be persuasive because "they are supported by his examination findings and the findings throughout the file." (Tr. 30.) However, the ALJ did not find the rest of Dr. Warren's opinions to be persuasive because "Dr. Warren observed no difficulty reaching or any sensory loss during his examination to support his conclusion about the claimant's ability to reach and feel with the right hand." (*Id.*) Furthermore, the ALJ stated that "the right hand findings throughout the record confirm that [Plaintiff] can use his injured hand for gross movements like handling on at least an occasional basis." (Tr. 30-31, 45-49.) Furthermore, the ALJ discredited Dr. Warren's opinions because "[h]e failed to explain his opinions that the claimant would need to lie down, sleep, or elevate his legs for any length of time or that the claimant would be off task half of the workday" because "no objective findings confirm those conclusions." (Tr. 31, 820.)

Dr. Warren also offered a summary of his impressions after examining Plaintiff, stating that Plaintiff "has a low level of intellect and poor level of education that have further hampered his ability to work" and "[h]is psychiatric illness does not appear to be well controlled, despite his current medications." (Tr. 791.) The ALJ found these comments to be unpersuasive because "he included no mental status findings in his examination report" and because "those opinions are grossly

inconsistent with the evidence as the claimant's treating psychiatrists have estimated that his intellectual functioning falls in the average range." (Tr. 31, 807, 810.)

Again, the Court finds that the ALJ provided sufficient clarity for finding Dr. Warren's opinions only partially persuasive, given the inconsistencies and lack of support from other evidence in the record. Substantial evidence supports the ALJ's conclusion that Dr. Warren's opinions were only partially persuasive.

### B. Substantial Evidence to Support the ALJ's Decision

Plaintiff argues that the ALJ's decision was not based upon substantial evidence because the hypothetical question posed to the VE "did not accurately state claimant's pain level or his residual functional capacity," and as a result the VE's testimony "was not based on a correct or full statement of [Plaintiff's] limitations and impairments." (Doc. 10 at 70.) During Plaintiff's hearing with the ALJ, a VE testified regarding Plaintiff's ability to find work in the current national economy. According to the VE, Plaintiff was no longer capable of performing any of his past relevant work because the injury to his right hand prevented him from performing manual labor. (Tr. at 67-74.) Accordingly, the burden shifted to the Commissioner to demonstrate that Plaintiff could perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial

evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989)). In order for a VE's answer to satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Importantly, however, an ALJ is not required to include symptoms that have been properly rejected because they lack the support in the record. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("The hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant. The characteristics the administrative law judge omitted are among those that [the claimant] alleged to suffer but were either not supported by her medical records or were alleviated by medication.")

The VE stated that there are two jobs available in the national economy that a hypothetical individual with Plaintiff's age, education, prior work experience, and RFC is capable of performing: fruit distributor and surveillance system monitor. (*Id.*) The hypothetical questions posed by the ALJ comprehensively cover all of Plaintiff's impairments. *Pendley*, 767 F.2d at 1563. As in *Ingram*, the limitations omitted from the ALJ's hypothetical questions were those that the ALJ determined were unsupported by the record. As already discussed, the ALJ properly found that the greater limitations suggested by Drs. Herrera, Wilson, Nichols, and Warren were

unsupported by the evidence and inconsistent with other evidence in the record. *See* Section III.A above.

Plaintiff seems to suggest, merely by bolding part of a block quote from the hearing transcript, that the ALJ erred by posing a hypothetical with an individual who is occasionally able to lift and/or carry twenty pounds. (Doc. 10 at 71; Tr. 69.) However, Dr. Herrera opined that Plaintiff could occasionally lift up to 25 pounds, and the ALJ found that opinion "to be fairly well supported by his concurrent treatment record" and "consistent with the objective findings from other medical sources." (Tr. 30, 720.)

Plaintiff highlights no other issues with the hypothetical questions posed by the ALJ, but his block quote includes questions posed to the VE by his attorney that contain greater limitations than those the ALJ found in Plaintiff's RFC. (Doc. 10 at 72-73.) Plaintiff did not challenge the ALJ's conclusions as to his RFC, and the Court has found that substantial evidence supports the ALJ's finding that the greater limitations suggested by Drs. Herrera, Wilson, Nichols, and Warren were unsupported by and inconsistent with the record. Accordingly, the ALJ did not err in the hypothetical she posed to the VE, and substantial evidence supports her decision.

## IV.   Conclusion

Upon review of the administrative record, and considering Bell's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JULY 21, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728
